COURT OF APPEALS OF VIRGINIA


Present:  Judges Frank, Clements and Senior Judge Coleman
Argued at Richmond, Virginia


WILLIAM MARZETTE

MEMORANDUM OPINION[*] BY
v.      Record No. 2501-06-2      JUDGE ROBERT P. FRANK
                                                    NOVEMBER 27, 2007

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Margaret P. Spencer, Judge

Karen L. Stallard, Supervising Appellate Defender (Office of the
Public Defender, on brief), for appellant.

Susan M. Harris, Assistant Attorney General (Robert F. McDonnell,
Attorney General, on brief), for appellee.


William Marzette, appellant, was convicted in a bench trial of possession of a firearm by a

convicted felon in violation of Code § 18.2-308.2.  On appeal, he contends the trial court erred in

denying his motion to suppress the firearm recovered from a pat-down search.  The

Commonwealth responds that even if the pat down violated appellant's Fourth Amendment

rights, the police would have inevitably discovered the firearm.  Finding that the pat down was

illegal and that the inevitable discovery doctrine does not apply to the facts of this case, we

reverse the conviction.

BACKGROUND

Richmond Police Officer Kevin Mills was on duty with Officer Bryan Lindsey in January

2006, when he observed appellant and another man on property owned by Richmond

Redevelopment Housing Authority (RRHA).  RRHA property is public housing and posted with

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

signs that read "No Trespass." Officer Mills is authorized to enforce trespass laws on this property.

At approximately 6:38 p.m., Mills observed appellant and his companion walk off the property and approach a food stand. After appellant purchased a bag of potato chips, appellant and his friend parted ways. Mills then approached appellant, stopped him, and asked appellant if he lived on the property. When appellant responded that he did not, Mills asked appellant for identification. Appellant gave Mills a Virginia identification card that indicated he did not live on the property.[1] At that point, Mills intended to "bar [appellant] from the property or write him for trespassing."

Mills asked appellant if he had any weapons on him. Appellant responded by asking Mills if he was under arrest. Mills stated that as he was talking, appellant appeared nervous and "kept walking in circles." Mills testified, "In my experience, that when somebody is acting in that demeanor, they have a firearm, concealing drugs, or they have a warrant."

Mills again asked if he could pat down appellant. Appellant responded that he could not. Mills waited for two other officers to approach, and told appellant he was going to pat him down. As appellant turned his upper torso away, Mills "grabbed him by the left arm," patted his waistline, and immediately felt and recovered a firearm. After placing appellant under arrest, Mills "ran his information" and found that appellant had an outstanding arrest warrant from Henrico County.

Mills testified that at the time of the pat down he could see no visible signs of a weapon on appellant. "There were no bulges or anything." His concern for his safety arose from appellant "being nervous, moving around."

---

[1] The record does not reflect if, or when, Mills returned the identification card to appellant at any point during the encounter.

The trial court denied appellant's motion to suppress, finding that the initial encounter between Mills and appellant was consensual. The court reasoned that once Mills determined appellant did not live on the property, "[t]he officer, pursuant to Terry, was authorized to detain [appellant] and to frisk him for safety." Although the Commonwealth argued inevitable discovery below, the trial court did not address this issue because it denied appellant's motion to suppress and admitted the firearm into evidence.

This appeal follows.

## ANALYSIS

### Motion to Suppress

The trial court found that because the pat down of appellant was lawful, the firearm that police recovered during the pat down was admissible evidence at trial. Appellant challenges this ruling, arguing that the encounter was a seizure from its inception. Appellant argues in the alternative that even if the initial encounter was consensual, the circumstances did not warrant a pat down. The Commonwealth responds that either way, the firearm would have inevitably been discovered and the gun was admissible evidence at trial.

"In reviewing a trial court's denial of a motion to suppress, '[t]he burden is upon [the defendant] to show that th[e] ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error.'" McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (*en banc*) (alterations in original) (quoting Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980)). "'Ultimate questions of reasonable suspicion and probable cause to make a warrantless search' involve questions of both law and fact and are reviewed *de novo* on appeal." Id. (quoting Ornelas v. United States, 517 U.S. 690, 691 (1996)). "Similarly, the question whether a person has been seized in violation of the Fourth Amendment is reviewed *de novo* on appeal." Reittinger v. Commonwealth, 260 Va.

232, 236, 532 S.E.2d 25, 27 (2000). However, "we are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee, 25 Va. App. at 198, 487 S.E.2d at 261 (citing Ornelas, 517 U.S. at 699).

> Fourth Amendment jurisprudence "has placed police-citizen confrontations into three categories." "First, there are communications between police officers and citizens that are consensual and, therefore, do not implicate the fourth amendment." Second, are "brief investigatory stops" based upon "specific and articulable facts" and third, are "highly intrusive, full-scale arrests" based upon probable cause.

Payne v. Commonwealth, 14 Va. App. 86, 88, 414 S.E.2d 869, 869-70 (1992) (quoting Iglesias v. Commonwealth, 7 Va. App. 93, 99, 372 S.E.2d 170, 173 (1988)) (other citations omitted).

Assuming, without deciding, the initial detention was lawful, we find Officer Mills' frisk of appellant for weapons was not supported by a reasonable belief he was armed and presently dangerous, which is the necessary predicate for a pat down for weapons. Lowe v. Commonwealth, 33 Va. App. 656, 660-61, 536 S.E.2d 454, 456-57 (2000).

In determining whether a police officer had reasonable suspicion to justify an investigatory stop and pat-down search, we must view the circumstances "available to the officer" at the time of the seizure and search through the eyes of a reasonable person. Christian v. Commonwealth, 33 Va. App. 704, 711-12, 536 S.E.2d 477, 481 (2000) (*en banc*).

> An officer may conduct a pat-down search for weapons if the officer can point to specific and articulable facts which reasonably lead him to conclude that criminal activity may be afoot and that the person subjected to the search may be armed and dangerous. See James v. Commonwealth, 22 Va. App. 740, 745, 473 S.E.2d 90, 92 (1996). The authority to conduct a pat-down search does not follow automatically from the authority to effectuate an investigative stop. See Williams v. Commonwealth, 4 Va. App. 53, 66, 354 S.E.2d 79, 86 (1987). "Only where the officer can 'point to particular facts from which he reasonably inferred that the individual was armed and dangerous' is he justified in searching for weapons." Id. at 66-67, 354 S.E.2d at 86 (quoting Sibron v.

- 4 -

New York, 392 U.S. 40, 64 (1968)). See Ybarra v. Illinois, 444 U.S. 85, 93-94 (1979) (stating that the United States Supreme Court's holding in Terry does not authorize "a generalized 'cursory search for weapons'" and "does not permit a frisk for weapons on less than reasonable belief or suspicion directed at the person to be frisked").

Harrell v. Commonwealth, 30 Va. App. 398, 403-04, 517 S.E.2d 256, 258-59 (1999).

"The circumstances that a court can consider when determining whether an officer had reasonable suspicion include the nature of the area in which the stop occurred, the time of day, the conduct and demeanor of the suspect, and the type of offense that the officer was investigating." Walker v. Commonwealth, 42 Va. App. 782, 791-92, 595 S.E.2d 30, 35 (2004). In other words, "the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Terry v. Ohio, 392 U.S. 1, 27 (1968).

Here, we find Officer Mills did not have a reasonable, articulable suspicion that appellant was armed and presently dangerous. The encounter with appellant began as a conversation, with Mills asking appellant where he lived. Mills twice asked for permission to frisk appellant, and appellant refused. Nothing in the record suggests appellant acted aggressively or engaged in any other form of behavior that would suggest to Mills that his safety was in jeopardy. There is no evidence that the encounter took place in a high-crime area or that appellant was engaged in drug activity. See Williams, 4 Va. App. at 67, 354 S.E.2d at 87 ("[S]uspicion of narcotics possession and distribution . . . , standing alone, gives rise to an inference of dangerousness . . . .").

Although Mills testified that appellant appeared nervous and his conduct led Mills to believe he may have been in possession of a weapon, there is no other evidence to suggest appellant was armed or dangerous. See Walker, 42 Va. App. at 792, 595 S.E.2d at 35 (holding appellant's strange behavior and "very nervous" appearance in area known for drug activity, and officer's concern when appellant refused to remove hand from his pocket, justified frisk); James

- 5 -

v. Commonwealth, 22 Va. App. 740, 745-46, 473 S.E.2d 90, 92 (1996) (holding passenger's "jittery" behavior while officers arrested driver on felony warrant and passenger's unresponsiveness to requests to keep hands in view supported frisk). In contrast to these examples, the record here does not show that appellant was holding anything dangerous in his hands or about his person, or that he was trying to conceal his hands from the officer.

The only circumstance that Mills could consider in support of reasonable suspicion was appellant's nervous behavior. However, an officer's perception of a suspect's nervousness, without additional articulable facts reasonably suggesting the suspect is armed and presently dangerous, cannot justify a pat-down search. Moore v. Commonwealth, 12 Va. App. 404, 406-07, 404 S.E.2d 77, 78 (1991) (holding that, where the pat-down search was based only on the officer's "subjective evaluation of the severity of [appellant's] nervousness," "the officer lacked sufficient justification to conduct the pat-down search").

Thus, we find that Mills' frisk of appellant for weapons was not supported by a reasonable belief he was armed and presently dangerous. See Roulhac v. Commonwealth, 50 Va. App. 8, 19, 646 S.E.2d 4, 10 (2007) ("Without consent or reasonable suspicion that appellant was armed, [the officer] had no lawful authority to grab appellant and to pat him down for weapons."). To that end, we hold that the evidence recovered as a result of that illegal search was not admissible at trial. Wong Sun v. United States, 371 U.S. 471, 485-88 (1963).

Inevitable Discovery

We turn now to the Commonwealth's argument that the police would have inevitably discovered the firearm. We conclude that inevitable discovery does not apply to the facts of this case.

Ordinarily, evidence obtained as the result of an unlawful search is subject to suppression under the exclusionary rule. Weeks v. United States, 232 U.S. 383, 398 (1914); Hart v.

- 6 -

Commonwealth, 221 Va. 283, 287, 269 S.E.2d 806, 809 (1980).  However, not all illegally obtained evidence is subject to suppression.  Wong Sun, 371 U.S. at 487-88.

One of the exceptions to the exclusionary rule is the doctrine of inevitable discovery. Commonwealth v. Jones, James, 267 Va. 532, 535, 593 S.E.2d 204, 206 (2004).  To come within the exception, the Commonwealth must show (1) a reasonable probability that the evidence in question would have been discovered by lawful means but for the police misconduct, and (2) that the leads making the discovery inevitable were possessed by the police at the time of the misconduct.  Id. at 538, 593 S.E.2d at 208.

The facts are not in dispute.  Accordingly, we address the ultimate issue of law, application of the inevitable discovery doctrine, *de novo*.  Copeland v. Commonwealth, 42 Va. App. 424, 437, 592 S.E.2d 391, 397 (2004).

The Commonwealth argues that the police would have recovered the firearm in a search incident to the arrest on the outstanding warrant.  This argument presupposes that 1) appellant would have been arrested or issued a summons for trespassing, and 2) Mills would have checked for outstanding warrants after charging appellant with trespassing.

We find that, on the record before us, Mills did not have probable cause to charge appellant with trespassing.  See Jones v. Commonwealth, 18 Va. App. 229, 233, 443 S.E.2d 189, 191 (1994) (holding that appellant's "mere presence with another man on the premises . . . in the afternoon . . . was insufficient to establish probable cause to believe that [appellant] was neither a resident of the apartment complex nor legitimately upon the premises at the invitation of a resident").  Although Mills testified that he was either going to "write" appellant for trespassing or ban him from the property, Mills did neither.  Mills never asked appellant why he was on RRHA property, and the record reveals no evidence of how appellant may or may not have explained his presence there.  Because appellant's presence alone is not probable cause to charge

- 7 -

him with trespassing, any such arrest would have been illegal. Absent a lawful arrest, the Commonwealth has not shown how Mills would have lawfully inevitably discovered the firearm.

In addition, the Commonwealth has not shown that Mills, or any other officer, routinely conducts record checks under these circumstances. Thus, the Commonwealth has failed to meet the first prong of the <u>Jones, James</u> test, which requires the Commonwealth to prove by a preponderance of the evidence that the evidence would have been discovered by lawful means absent the police misconduct. <u>Jones, James</u>, 267 Va. at 538, 593 S.E.2d at 208.

CONCLUSION

For the foregoing reasons, we find that the trial court erred in denying appellant's motion to suppress. In addition, we find the inevitable discovery rule inapplicable to the facts of this case. Accordingly, we reverse the trial court and remand for further proceedings if the Commonwealth be so advised.

<u>Reversed and remanded.</u>