COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Frank and Haley
Argued at Chesapeake, Virginia


GEORGE SHERRELL THOMPSON
                                                        OPINION BY
v.       Record No. 2408-07-1                   JUDGE ROBERT P. FRANK
                                                        APRIL 28, 2009
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Everett A. Martin, Jr., Judge*

J. Barry McCracken, Assistant Public Denfender (Office of the
Public Defender, on brief), for appellant.

Kathleen B. Martin, Senior Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.


George Sherrell Thompson, appellant, was convicted, in a bench trial, of possession of

cocaine with the intent to distribute, in violation of Code § 18.2-248; possession of a firearm while

possessing with the intent to distribute cocaine, in violation of Code § 18.2-308.4, possession of a

firearm by a convicted felon, in violation of Code § 18.2-308.2; carrying a concealed weapon,

second offense, in violation of Code § 18.2-308, and possession of marijuana, in violation of Code

§ 18.2-250.1.  On appeal, appellant claims the trial court erred in denying his motion to suppress,

contending the police had no legal basis to pat him down.  For the reasons stated, we reverse

appellant's convictions.

BACKGROUND

On appeal, we review the evidence in the "light most favorable" to the Commonwealth.

Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003).  That principle requires

_____

* Judge Alfred M. Tripp presided at appellant's hearing on his motion to suppress.

us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980) (emphasis and citation omitted).

So viewed, in the morning of December 10, 2006, Officer Gerard Cofer of the Norfolk Police Department approached a Lafayette Boulevard address to execute an arrest warrant for a person inside that residence. The officer observed appellant standing with two other men "loitering" in front of a convenience store on Lafayette Boulevard. Cofer knew from his experience as a police officer, having made arrests at that location, that the area was known as an "open market for drug sales." As an undercover officer, Cofer had previously made drug buys at that location and had made several drug-related arrests there. Cofer testified loitering was a factor in such sales. Signs prohibiting loitering or trespassing were posted in front of the store, and the City of Norfolk had authorized the police department to enforce "no trespassing" at that convenience store.

Prior to executing the arrest warrant at the residence, Cofer observed appellant for approximately five minutes. The execution of the arrest warrant took "about ten minutes." Cofer then returned to the convenience store. Appellant was "still loitering" in front of the store. He observed appellant for another three to five minutes before he approached appellant. Cofer was dressed in his police uniform, displaying his badge. The two men with appellant separated and walked away.

Upon seeing Cofer, appellant started walking toward the front door of the store, but he voluntarily turned around at Cofer's request. Cofer asked to see appellant's identification, stating that he wanted to check whether appellant had any outstanding warrants. Appellant gave Cofer the identification, offering no explanation as to why he was standing in front of the store.

While waiting for the warrant check, Cofer asked appellant if he had any weapons or contraband. Appellant did not respond, and Cofer repeated the question. Appellant again was unresponsive and began acting nervously. Appellant's "hand started to tremble." Appellant was "shifting his body weight," and appeared to be "looking for different avenues of escape." The officer believed appellant's behavior far exceeded the "small degree of nervousness" typically observed during a routine police encounter.

Cofer asked appellant a third time if he had any weapons. When appellant remained unresponsive, Cofer placed him on the wall near the front door of the store. Concerned that appellant had a concealed weapon, Cofer told appellant he was going to pat him down for weapons for the officer's safety. Cofer began the pat down.

As the officer reached toward appellant's waistband, appellant "snatched his right hand down and went towards the left side of his waistband." Cofer grabbed appellant's right wrist. He then felt what he believed from his experience was the handle of a handgun in the left front side of appellant's waistband.

Upon lifting appellant's shirt, Cofer discovered a .45 caliber pistol protruding from appellant's waistband. Cofer then placed appellant in custody and handcuffed him. During a subsequent search incident to arrest, Cofer recovered a fully loaded magazine clip for the handgun, a bag containing marijuana and cocaine, and a dollar bill with cocaine residue.

Pretrial, appellant filed a motion to suppress, alleging that the officer had no reasonable articulable suspicion to conduct a pat down, nor probable cause to search. The trial court denied the motion.

This appeal follows.

ANALYSIS

On appeal, appellant argues his seizure was illegal because the police had no reasonable articulable suspicion that he was engaged in criminal activity in violation of Terry v. Ohio, 392 U.S. 1 (1968). He further contends that the pat down was illegal because the police had no reason to believe he was armed and dangerous.

When reviewing a trial court's denial of a motion to suppress, "we are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*) (quoting Ornelas v. United States, 517 U.S. 690, 699 (1996)). The burden is on the defendant to show that the denial of his suppression motion, when the evidence is considered in the light most favorable to the Commonwealth, was reversible error. McCain v. Commonwealth, 261 Va. 483, 489-90, 545 S.E.2d 541, 545 (2001) (citing Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980)). "'Ultimate questions of reasonable suspicion and probable cause to make a warrantless search'" involve questions of both law and fact and are reviewed *de novo* on appeal. McGee, 25 Va. App. at 198, 487 S.E.2d at 261 (quoting Ornelas, 517 U.S. at 691).

The Fourth Amendment prohibits only unreasonable searches and seizures. James v. Commonwealth, 22 Va. App. 740, 745, 473 S.E.2d 90, 92 (1996). It is not unreasonable for a police officer to conduct a limited pat-down search for weapons when the officer can point to "specific and articulable facts" "which reasonably lead[] him to conclude, in light of his experience, that 'criminal activity may be afoot' and that the suspect 'may be armed and presently dangerous.'" Lansdown v. Commonwealth, 226 Va. 204, 209, 308 S.E.2d 106, 110 (1983) (quoting Terry, 392 U.S. at 30), cert. denied, 465 U.S. 1104 (1984). "Reasonableness is judged from the perspective of a reasonable officer on the scene allowing for the need of

split-second decisions and without regard to the officer's intent or motivation." Scott v. Commonwealth, 20 Va. App. 725, 727, 460 S.E.2d 610, 612 (1995) (citing Graham v. Connor, 490 U.S. 386, 396-97 (1989)). An officer is entitled to view the circumstances confronting him in light of his training and experience, Terry, 392 U.S. at 27, and he may consider any suspicious conduct of the suspected person. Williams v. Commonwealth, 4 Va. App. 53, 67, 354 S.E.2d 79, 86-87 (1987).

"[A]n appellate court decides cases 'on the best and narrowest ground available.'" Luginbyhl v. Commonwealth, 48 Va. App. 58, 64, 628 S.E.2d 74, 77 (2006) (*en banc*) (quoting Air Courier Conference v. Am. Postal Workers Union, 498 U.S. 517, 531 (1991) (Stevens, J., concurring)). Thus, we do not address the legality of the seizure in this case because we reverse on other grounds. Our singular inquiry is whether Officer Cofer had a reasonable suspicion that appellant was armed and dangerous.

An officer may not automatically search a suspect in the course of a Terry stop, but he may frisk the suspect if he develops reasonable suspicion during the Terry stop to believe the particular person to be frisked is armed and dangerous. Knowles v. Iowa, 525 U.S. 113, 117-18 (1998). Among the factors relevant to this analysis include "characteristics of the area surrounding the stop, the time of the stop, the specific conduct of the suspect individual, the character of the offense under suspicion, and the unique perspective of a police officer trained and experienced in the detection of crime." McCain v. Commonwealth, 275 Va. 546, 554, 659 S.E.2d 512, 517 (2008).

Appellant argues on appeal that his cooperation with the police, i.e., voluntarily approaching the officer and providing his identification, coupled with no aggressive behavior, militate against any concern the officer may have had due to the "open drug market" location. Appellant suggests that his nervousness, even with his refusal to answer Cofer's inquiry about weapons, without more,

is insufficient to give the officer reason to believe he was armed and dangerous. Appellant further points out that prior to the pat down he exhibited no behavior that suggested he was armed and dangerous.

We first note that Officer Cofer observed appellant for eight to ten minutes loitering in front of the store, known to be the site of drug distribution and drug-related arrests. Cofer characterized the area as an "open market for drug sales." Certainly, this factor by itself is insufficient to warrant a pat down. "Even in high crime areas, where the possibility that any given individual is armed is significant, Terry requires reasonable, individualized suspicion before a frisk for weapons can be conducted." Maryland v. Buie, 494 U.S. 325, 334 n.2 (1990).

Next, we consider appellant's conduct when the officer inquired whether appellant had any weapons. The officer described appellant as nervous, with his hands trembling. He appeared to be "looking for different avenues of escape."

An officer's perception of a suspect's nervousness, without additional articulable facts reasonably suggesting the suspect is armed and presently dangerous, cannot justify a pat-down search. See Moore v. Commonwealth, 12 Va. App. 404, 406-07, 404 S.E.2d 77, 78 (1991) (holding that, where the pat-down search was based only on the officer's "subjective evaluation of the severity of [appellant's] nervousness," "the officer lacked sufficient justification to conduct the pat-down search"). "Nervousness . . . standing alone, is insufficient to justify a frisk for weapons, but 'nervous, evasive behavior is a pertinent factor' for consideration in assessing the totality of the circumstances." McCain, 275 Va. at 554, 659 S.E.2d at 517 (quoting Illinois v. Wardlow, 528 U.S. 119, 124 (2000)); see also Walker v. Commonwealth, 42 Va. App. 782, 792, 595 S.E.2d 30, 35 (2004) (holding appellant's strange behavior and "very nervous" appearance in area known for drug activity, and officer's concern when appellant refused to remove hand from his pocket, justified frisk); James, 22 Va. App. at 745-46, 473 S.E.2d at 92 (holding

passenger's "jittery" behavior while officers arrested driver on felony warrant and passenger's unresponsiveness to requests to keep hands in view supported a frisk). In contrast to these examples, the record here does not show that appellant concealed or attempted to conceal his hands from Officer Cofer.

We are mindful that this Court has previously acknowledged that suspicion of narcotics distribution gives rise to an inference of dangerousness. See Williams, 4 Va. App. at 67, 354 S.E.2d at 87 (holding that even though the officers who detained Williams had no information that he was armed, they acted reasonably when conducting a protective pat-down search for weapons in light of the fact that they had a reasonable suspicion that Williams was presently engaged in narcotics distribution); see also Jones v. Commonwealth, 272 Va. 692, 701 n.3, 636 S.E.2d 403, 407 n.3 (2006) (noting "it is reasonable for an officer to believe a person may be armed and dangerous when the person is suspected of being involved in a drug transaction").

We are not prepared to conclude that one who loiters in an "open market for drug sales" is automatically subject to a pat down. When there are no other relevant facts to suggest a person is involved in the distribution of drugs, such as a hand-to-hand transaction, contact with others, or maintenance of a "stash," we are compelled to conclude that the record does not support a reasonable basis for a weapons pat down.

Officer Cofer, an experienced narcotics officer who had previously worked as an undercover agent buying drugs at the location of that convenience store, believed appellant might be involved in narcotics activity. Cofer was familiar with the area, having made arrests at that very location. He was equally familiar with the pattern of those who sell drugs, indicating that loitering was a factor in the distribution of drugs. However, nothing in the record suggests that Officer Cofer had anything more than a hunch that appellant was distributing illegal drugs. See Roulhac v. Commonwealth, 50 Va. App. 8, 18, 646 S.E.2d 4, 9 (2007) (finding no basis to conclude appellant was armed and

dangerous where the record is silent as to appellant's involvement in criminal activity, "much less his association with drug distribution").

The common thread in those cases involving high crime areas and nervous behavior is the specific act of a furtive gesture to suggest that the suspect is armed. See Jones v. Commonwealth, 52 Va. App. 548, 557, 665 S.E.2d 261, 266 (2008) (finding that because appellant refused to show his hands and reached to the floorboard three times, the officer reasonably believed appellant was armed and dangerous and pat down was justified); Bandy v. Commonwealth, 52 Va. App. 510, 519, 664 S.E.2d 519, 523 (2008) (finding that appellant's nervousness, his inability to explain his presence on private property, his association with a man carrying cocaine, and his repeated motions toward his pocket made it reasonable for the officer to believe appellant was armed and dangerous.); Walker, 42 Va. App. at 792, 595 S.E.2d at 35 (holding appellant's strange behavior and "very nervous" appearance in area known for drug activity, and officer's concern when appellant refused to remove hand from his pocket, justified frisk); Welshman v. Commonwealth, 28 Va. App. 20, 34, 502 S.E.2d 122, 129 (1998) (*en banc*) (noting that "[t]he refusal of a person detained to show his hands" may provide a basis for a frisk of the person for weapons); James, 22 Va. App. at 745-46, 473 S.E.2d at 92 (observing that passenger's "jittery" behavior while officers arrested driver on felony warrant and passenger's unresponsiveness to requests to keep hands in view supported frisk). We again underscore that nothing in this record indicates that appellant conducted himself in such a way as to lead Officer Cofer to believe he was reaching for or concealing a weapon.[1]

In addition, there was nothing unique about appellant's clothing that would suggest he was concealing a weapon. In Simmons v. Commonwealth, 217 Va. 552, 231 S.E.2d 218 (1977),

---

[1] Although Officer Cofer testified that appellant reached into his waistband, this activity occurred after the pat down had begun and therefore cannot be considered in whether appellant was armed and dangerous prior to the onset of the search.

for example, the Supreme Court of Virginia held that the officer reasonably concluded that the "warm-up jacket sagging in the front" contained a weapon, and, accordingly, he was justified in searching the suspect for weapons. Id. at 556, 231 S.E.2d at 219-20. Similarly, in United States v. Black, 525 F.3d 539 (4th Cir. 2008), the Fourth Circuit held that after noticing the suspect had a bulge in his pocket that he believed to be a gun, the officer was justified in conducting a Terry stop and patting him down. Here, the Commonwealth cannot point to any facts which suggest that, based upon appellant's clothing, he possessed a concealed weapon or was otherwise armed and dangerous.

We conclude that Officer Cofer lacked facts giving rise to reasonable suspicion to believe appellant was armed and dangerous. Although the area was known as an open-air drug market, the encounter occurred at approximately 8:00 a.m. and in broad daylight. Appellant initially agreed to the encounter and it occurred in a public place, yet appellant was under no obligation to respond to Officer Cofer's questions. See Cost v. Commonwealth, 275 Va. 246, 253, 657 S.E.2d 505, 509 (2008) ("[A]ppellant's failure to respond to the officer's questions is of no particular significance because [appellant] was under no obligation to respond to [the officer's] questions."). Cofer observed appellant for nearly fifteen minutes and did not witness appellant or his companions engage in criminal activity. Equally important, the record is silent as to appellant making furtive gestures or concealing his hands.

Officer Cofer may have had a hunch that appellant was involved with drugs because of the neighborhood, the amount of time he spent outside the convenience store, and appellant's refusal to answer questions. However, such a hunch does not rise to the level of reasonable suspicion. The officer's interaction with appellant during the brief encounter did not elevate that hunch to reasonable suspicion because Officer Cofer developed no additional facts during the course of the encounter that would support a reasonable suspicion that appellant was involved in

criminal activity or was armed and dangerous.  Thus, we find that Officer Cofer's frisk of

appellant for weapons was not supported by a reasonable belief he was armed and presently

dangerous.  See Roulhac, 50 Va. App. at 19, 646 S.E.2d at 10 ("Without consent or reasonable

suspicion that appellant was armed, [the officer] had no lawful authority to grab appellant and to

pat him down for weapons.").  To that end, we hold that the evidence recovered as a result of that

illegal search was not admissible at trial.  Wong Sun v. United States, 371 U.S. 471, 485-88

(1963).

CONCLUSION

For the foregoing reasons, we find that the trial court erred in denying appellant's motion

to suppress.  Accordingly, we reverse the trial court and remand for further proceedings if the

Commonwealth be so advised.

Reversed and remanded.